Fletcher, etc., Trust Co. *v.* Fidelity, etc., Co.—84 Ind. App. 659.

FLETCHER SAVINGS AND TRUST COMPANY *v.* FIDELITY
AND DEPOSIT COMPANY OF MARYLAND.

[No. 12,097. Filed October 13, 1925. Rehearing denied January
27, 1926. Transfer denied May 20, 1926.]

INSURANCE.—*Bankers' "forgery and alteration" policy of insurance held not to cover losses on account of money loaned on notes by corporation, not a depositor.*—A bankers' "forgery and alteration" policy of insurance which covenanted to protect the bank from loss through its payment of any promissory note payable at the insured bank "upon which there shall have been forged, as the drawer, maker or acceptor thereof, the signature of a depositor or that of any person whose signature such depositor has instructed the insured bank to recognize," or "any promissory note payable at the insured bank * * * upon which the name of any indorser shall have been forged" did not cover losses on account of money loaned by the bank on notes executed by a corporation, not a depositor therein, supplemented by a separate surety agreement of its officers, to which one of the signatures thereto had been forged.

From Morgan Circuit Court; *Joseph W. Williams,*
Judge.

Action by the Fletcher Savings and Trust Company against the Fidelity and Deposit Company of Maryland. From a judgment for defendant, the plaintiff appeals. *Affirmed.* By the court in banc.

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, Albert C. Rabb, Thomas D. Stevenson, Perry E. O'Neal* and *S. C. Kivett,* for appellant.

*Ralph E. Kane, Gideon W. Blain* and *Robert Hollowell, Jr.,* for appellee.

McMAHAN, J.—This action was brought by appellant to recover on a bankers' blanket forgery and alteration policy of insurance. The complaint was in two paragraphs. A demurrer to each paragraph having been sustained, appellant appeals.

The first paragraph of complaint alleged, in sub-

stance, that on November 15, 1921, appellee issued to appellant a policy of insurance, whereby appellee agreed to indemnify appellant against direct loss which might be sustained by appellant under the terms of such policy. The policy is made a part of the complaint, and, by its terms, appellee agreed to indemnify appellant against loss, not exceeding $25,000, which it might sustain through payment by appellant: "A.—Of any check, certified check, or draft drawn upon the Insured Bank, or of any *promissory note* or *domestic trade acceptance* or *bank acceptance* payable at the Insured Bank, and upon which there shall have been forged as the Drawer, Maker or Acceptor thereof, the signature of a depositor or that of any person whose signature such depositor has instructed the Insured Bank to recognize, or B.—Of any *check, certified check* or *draft* drawn upon the Insured Bank, or of any *promissory note, domestic trade acceptance* or *bank acceptance* payable at the Insured Bank, or of any *certificate of deposit* issued, or of any acceptance made, by the Insured Bank which shall have been raised or altered in any respect, or upon which the name of any indorser shall have been forged."

That while said policy was in force, the Mutual Printing and Lithographing Company applied to appellant to extend certain credit to it on promissory notes to be executed by said company to appellant. That B. G. Saltzgaber and W. E. Henkel had been and then were officers and stockholders of said company, said Henkel then being a man of large means and abundantly responsible for any obligation incurred by him up to $100,000. That appellant refused to extend any credit to said company unless and until said Henkel should become indorser of such notes as should be executed by said company to appellant. That thereafter, Saltzgaber presented to appellant a written instrument purporting

to have been signed by Saltzgaber and Henkel, and reading as follows: "Indianapolis, Indiana. February 8, 1922. I hereby become surety for the payment of all present or future obligations and indebtedness, and the renewals and extensions thereof, now owing or hereafter incurred by the Mutual Printing and Lithographing Company to Fletcher Savings and Trust Company of Indianapolis, and as such surety I agree to pay such respective obligations, debts, renewals and extensions according to their terms. On written notice from me to said bank to that effect, I shall not be liable for obligations thereafter incurred. B. G. Saltzgaber, W. E. Henkel." That when Saltzgaber presented said instrument to appellant, he represented that it had been executed by Henkel, and appellant, believing it had been executed by Henkel, took and accepted from said company certain promissory notes, and that it paid to said company the total of $39,000, which amount was subsequently reduced to $38,000, by reason of a certain payment.

That during all the times herein referred to and for many years prior thereto, there has existed continuously an established, uniform, widespread, universal, general and notorious custom and usage in the banking and trust company business in the city of Indianapolis and elsewhere throughout the State of Indiana that the word "indorser" signified and included all persons who indorsed a promissory note on the note itself and also signified and included all persons who, by a separate written instrument, agreed to pay the present or future obligations and indebtedness of another; that the plaintiff and defendant, in making the said insurance contract, contracted with reference to and in view of said custom, usage and practice, and that the same entered into and became a part of said insurance policy, and that said insurance policy was executed by the

parties thereto with full knowledge on the part of each of said custom, usage and practice, and with the intent and purpose that such custom, usage and practice should apply to and become a part of said insurance policy; that the word "indorser" used in said insurance policy was used with reference to said custom, usage and practice and with the intent on the part of both parties thereto that it should include not merely a forged indorsement on a note itself, but any forged signature of any person who by a separate written instrument agreed to pay the obligation of another.

That during all the times hereinbefore referred to and for many years prior thereto, there had existed continuously an established, uniform, widespread, universal, general and notorious custom, usage and practice in the banking and trust company business in the city of Indianapolis, and elsewhere throughout the State of Indiana, of which defendant had full knowledge and notice at the time it executed the policy sued on, that banks and trust companies, when they desire to procure the indorsement of a particular person on the promissory notes of a corporation which are often to be renewed in whole or in part, would, instead of procuring such indorsement on each note as executed, procure from said proposed indorser a general agreement that he would become liable for the payment of all present or future obligations and indebtedness and the renewals and extensions thereof and an agreement from such prospective indorser to pay such respective obligations; that the plaintiff and defendant, in making said insurance contract, contracted with reference to and in view of said custom, usage and practice, and that the same entered into and became a part of said contract and insurance policy, and that said contract and insurance policy was executed by the parties thereto with full knowledge on each of their parts of said custom,

usage and practice and with the intent and purpose that such custom, usage and practice should apply to and become a part of said contract and insurance policy and that an agreement of the character above referred to, whereby said Henkel agreed to become surety for the payment of all present and future obligations and indebtedness of said Mutual Printing and Lithographing Company and, as such surety, agreed to pay such respective obligations, was within the contemplation of the parties an indorsement of each of such promissory notes; that the plaintiff hereto had for many years prior to the execution of the policy sued on followed such custom, usage and practice and that the defendant had full knowledge and notice of such fact at the time it executed said policy of insurance.

That Saltzgaber is dead. That Henkel did not sign said instrument, his signature thereto being a forgery. That the lithographing company is insolvent and in the hands of a receiver; that appellant will not receive from the estate of Saltzgaber and from the lithographing company a sum in excess of $4,000 and that the total loss to appellant on account of said forged instrument will be in excess of $34,000. That appellant did not learn of said forgery until after said money had all been paid to said company. That appellant believed the apparent signature of Henkel was his genuine signature and that it would not have paid said money to said company if it had not believed Henkel's signature was genuine. That proof of loss was made as required by the terms of the policy, and demanding judgment.

The second paragraph, after alleging the execution of the policy of insurance, is, in substance, the same as the first, except it omits the allegations concerning the custom and understanding as to the use and meaning of the word "indorser," and, in lieu thereof, alleges that while the policy was in force, appellant paid to the

lithographing company more than $37,000 in payment of certain written promises purporting to have been executed by said company, Saltzgaber and Henkel, by the terms of which, they promised to pay appellant, at its bank, a fixed sum of money. That said written promises to pay consisted of five separate instruments, all of which are set out and all of which are alleged to have constituted a single transaction. The first of said instruments is the written promise purporting to have been signed by Henkel. The other four are promissory notes, aggregating $39,000, executed by the lithographing company to appellant, each having on its face the words, "Customer's Loans."

Appellant, in discussing the first paragraph of complaint, recognizes and treats the several payments of money to the lithographing company as loans. The second paragraph alleged that the money was "paid" to the lithographing company on the execution of certain notes, designated as "Customer's Loans." In discussing the sufficiency of this paragraph, appellant makes no claim that the money paid to the lithographing company was anything other than a loan, and we are of the opinion that each paragraph clearly shows a loan of money to the company. We will, therefore, treat the transaction as a loan.

Henkel's name does not appear on any of the notes executed by the lithographing company and which were given for the money loaned to that company. The only instrument purporting to have been signed by him and, on the strength of which, the loans were made is the forged instrument hereinbefore set out.

Appellant has assumed that the loans to the lithographing company alleged in the complaint are covered by the policy of insurance and has devoted the whole of its discussion to the propositions: (1) That the name of Henkel must be construed as being written

*upon* each of the notes given by the lithographing company; and (2) that he was an apparent *indorser* of each of said notes. Having reached the conclusion that the transaction as alleged in the complaint is not covered by the policy of insurance, it is not necessary for us to determine whether the name of Henkel to the collateral agreement is to be considered as if it had been on each of the several notes, or whether, if his signature had been genuine, he would, in law, have been an *indorser* on the several notes.

Concededly, the policy extended insurance against forgery only under the conditions and within the limitations stated in the policy. The only provisions of the policy necessary for us to consider are those heretofore set out and designated "A" and "B." Clause "A" covers checks and drafts drawn upon appellant, and notes, trade and bank acceptances payable at appellant's bank. Not only must the instrument named be drawn upon, or payable at, appellant's bank, but the signature of a depositor in appellant's bank, or the signature of some person whose signature such depositor has authorized appellant to recognize, must have been forged as the drawer, maker or acceptor of the instrument. A note in order to come within this clause must be made payable at the insured bank, the person whose name appears thereon as maker must be a depositor in the insured bank, and his name, or that of his authorized agent, must be a forgery. If a note made payable at appellant's bank, purporting to be signed by a depositor, should, when due, be presented to appellant bank for payment, and it should pay such note, as it would have a right to do without further orders (*Bedford Bank* v. *Acoam* [1890], 125 Ind. 584, 25 N. E. 713, 9 L. R. A. 560, 21 Am. St. 258) if the signature of the maker was genuine, and charge the amount so paid against the deposit of the alleged maker, and it should develop

that the signature of the depositor to the alleged note was a forgery, appellant, under clause "A" could recover the amount so paid, up to the amount of the policy. If the signature of such maker was genuine, but the amount of the note had been raised or altered in any respect, or, if the name of any indorser upon said note had been forged, the loss if any would be covered by clause "B." The policy clearly was intended to cover, among other things, losses on account of the payment of a note which, under the law, appellant would be justified in paying if the alleged maker were a depositor in appellant bank, and if his name, or that of some indorser thereon, were not forged, or the note not raised or altered so as to subject the bank to a loss.

The policy covers loss "sustained through the payment by the Insured Bank * * * of any promissory note" described in the policy. It does not purport to and does not cover losses on account of money loaned under the facts of the instant case. This being true, there was no error in the action of the court in sustaining the demurrer to each paragraph of complaint. In order for appellant's contention to prevail, we would have to read something into the policy and extend the plain terms thereof. This we cannot do.

Judgment affirmed.